**SO ORDERED.**

**SIGNED this 20 day of February, 2015.**

_____
Stephani W. Humrickhouse
United States Bankruptcy Judge

_____

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION**

**IN RE:**

| | |
|---|---|
| **THOMAS B. ORMOND, JR.,** | **CHAPTER 7** |
| **SHEILA B. ORMOND,** | **CASE NO. 12-05489-8-SWH** |
| **DEBTORS.** | |

**ORDER GRANTING OBJECTION TO PROOF OF CLAIM**

The matters before the court are the chapter 7 trustee's objections to the claims filed by Yadkin Bank, Yadkin Bank's response in opposition to the objections and Crop Production Services' ("CPS") response in support of the objections. A hearing was held in Greenville, North Carolina on January 12, 2015. At the conclusion of the hearing, the court took the matter under advisement. Memoranda of law were filed on February 9, 2015, by the trustee and Yadkin Bank. Also before the court at the January 12, 2015 hearing, was CPS's motion for 2004 examination of Yadkin Bank and Yadkin Bank's response to the motion for 2004 examination.

**BACKGROUND**

The debtors, Thomas B. Ormond, Jr. and Sheila B. Ormond, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 30, 2012. The debtors listed various parcels of real property on their schedules, including real property securing the claim of Yadkin Bank. The case was converted to a chapter 7 proceeding on December 27, 2012 and Joseph N. Callaway was duly appointed as the chapter 7 trustee. As of the petition date, East Carolina Bank, predecessor of Yadkin Bank, was the holder of a promissory note secured by a deed of trust executed by the debtors on July 13, 2007, in the original principal amount of $715,000.00. On August 23, 2013, East Carolina Bank filed proof of claim number 5 ("Claim 5") and proof of claim number 6 ("Claim 6"), both as secured claims in the amounts of $628,434.23 and $42,532.45, respectively. Claim 5 shows it is secured by approximately 228.39 acres of real property in Bath, North Carolina (the "Property") and Claim 6 shows it is secured by a 2008 Myco TL and 2008 Fountain Boat.[1]" The Property at issue is also subject to a second priority lien of CPS. CPS filed Claim number 14 in the secured amount of $3,057,413.69.

On February 25, 2014, Yadkin Bank filed a motion for relief from the automatic stay as to the Property and CPS objected. After notice and a hearing, on May 27, 2014, the court granted Yadkin Bank's motion for relief from the automatic stay. On July 7, 2014, the trustee filed a motion to abandon real estate, including the Property, based on the lack of equity and the possibility of adverse tax consequences from the foreclosure sale. On July 29, 2014, the court granted the

---

[1] At the hearing on January 12, 2015, the parties represented that they had resolved all matters with respect to the objection to Claim 6 and that a consent order would be forthcoming. Accordingly, this Order only addresses the objection to claim as it relates to Claim 5.

trustee's motion for abandonment pursuant to 11 U.S.C. § 554(a) finding that certain real estate, including the Property, was "burdensome and of no benefit to the bankruptcy estate."

Yadkin Bank proceeded with its repossession and foreclosure sale of the Property through a special proceeding before the Clerk of Superior Court of Beaufort County, North Carolina, file number 14-SP-95. After several upset bids the sale was completed with the last and final bid being $983,981.25. The substitute trustee's deed was signed by the substitute trustee on November 26, 2014 and was recorded on the same day.

Claim 5 of Yadkin Bank was paid in full from the proceeds of the foreclosure sale in the approximate amount of $739,718.88. This amount is accounted for as follows: principal balance of $620,314.14; accrued interest of $116,054.74; and appraisal fee of $3,350.00. On December 17, 2014, Yadkin Bank amended its claim to $0[2]. The remaining proceeds of $244,262.37 remain in the attorney for Yadkin Bank's trust account. From this amount, Yadkin Bank seeks to be reimbursed for attorney's fees for the foreclosure sale in the amount of fifteen percent of the payoff of Claim 5 pursuant to N.C. Gen. Stat. § 6-21.1 of approximately $110,957.82, in addition to the 5% statutory foreclosing trustee commission of approximately $49,199.06. After deducting these amounts, the sum of $84,105.49 would remain for payment towards the second lien of CPS on the Property.

At the January 12, 2015 hearing, Yadkin Bank represented that prior to the entry of the order granting relief from stay, counsel for Yadkin Bank billed at a customary hourly rate basis, and that its fees had been paid through the last billing cycle. The date of the last billing cycle and the amount

---

[2]The court notes with interest that Yadkin Bank amended its claim to $0 after the foreclosure sale was completed and chose not to include an amount for its attorney's fees attributable to the foreclosure sale.

of fees were unclear. Yadkin Bank has not filed an application for attorney's fees with this court and has not provided a copy of the Final Report of Sale of Real Property to the trustee.

Pursuant to his objection to Claim 5, the trustee asserts that no final information sufficient to support the claim had been forthcoming from Yadkin Bank. At the January 12, 2015 hearing, the trustee represented that on several occasions he requested a copy of the Final Report of Sale of Real Property pursuant to N.C. Gen. Stat. § 45-21.33, required to be filed with the Clerk of Superior Court upon foreclosure, and has not been provided with the information. Counsel for Yadkin Bank represented that he was not sure whether the Final Report of Sale of Real Property had been filed with the Clerk of Superior Court for Beaufort County.

In addition, the trustee opposes Yadkin Bank's request for attorney's fees and contends that the fifteen percent fee, in light of the circumstances, is not objectively reasonable. The trustee does not contest that Yadkin Bank is entitled to reasonable attorney's fees in the collection and subsequent foreclosure of the Property pursuant to the contract and state law, but maintains that in order to receive a fee, it must comply with the requirements of 11 U.S.C. § 506(b) and move for an order from the Court setting a proper legal fee.

The trustee also filed an objection to proof of claim number 14 filed by CPS on the basis that CPS holds a second lien on the Property as well as an unsecured claim in the bankruptcy case. The trustee contends that CPS is entitled to funds from the foreclosure sale of the Property and payment to CPS of those proceeds would directly affect the distribution to unsecured claimants in the bankruptcy case. The trustee requested that the court enter an order requiring that the claim of CPS be reduced and estimated. At the January 12, 2015 hearing, the parties represented that the determination of the trustee's objection to claim 14 of CPS depends on the outcome of the trustee's

objection to Claim 5 of Yadkin Bank.  CPS asserts that it is entitled to all excess proceeds from the foreclosure sale of the Property and objects to the attorney's fees as requested by Yadkin Bank.

Yadkin Bank contends that the order of abandonment entered on July 7, 2014, divests this court of any jurisdiction regarding the Property, or its proceeds.  Accordingly, Yadkin Bank asserts the bankruptcy court has no jurisdiction to consider this matter.  Further, Yadkin Bank asserts that if this court determines that it does have jurisdiction to determine this matter, the fifteen percent attorney's fees calculation is per se reasonable under North Carolina law.

## DISCUSSION

First, the court will address whether it has jurisdiction over the Property and its proceeds to rule on this matter.  Section 1334 of Title 28 of the United States Code confers original and exclusive jurisdiction over a bankruptcy case to a federal court sitting as a bankruptcy court. Section 1334(e)(1) provides that the court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction "of all the property, wherever located, of the debtor as of the commencement of such case, and any property of the estate." 28 U.S.C. § 1334(e)(1) (emphasis added).  The Property was listed in the debtors' schedule A and was property of the debtors at the commencement of the case.  When the Property was abandoned it ceased to be property of the <u>estate</u>, but it was still property <u>of the debtors</u> over which this court has exclusive jurisdiction pursuant to § 1334(e)(1). See In re Gunter, 410 B.R. 178, 181 (Bankr. E.D.N.C. 2008) (finding jurisdiction over property of the debtor after the property was abandoned); 11 U.S.C. § 554.

Yadkin Bank cites to the Tenth Circuit case <u>Dewsnup v. Timm</u> (<u>In re Dewsnup</u>), which provides that "[p]roperty abandoned under this section ceases to be part of the estate" and reverts to the debtor as if no bankruptcy petition was filed.  908 F.2d 588, 590 (10th Cir. 1990) <u>aff'd sub</u>

5

nom. Dewsnup v. Timm, 502 U.S. 410, 112 S. Ct. 773, 116 L. Ed. 2d 903 (1992) (citing to H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 5, reprinted in 1978 U.S.Code Cong. & Admin.News at 6299. ("Property ceases to be property of the estate, such as by sale, abandonment, or exemption.")). In re Dewsnup addressed the issue of whether a chapter 7 debtor could use 11 U.S.C. § 506(d) to void the undersecured portion of a lien on real property which had been abandoned by the bankruptcy estate. Id. at 589.  The Tenth Circuit held that the debtor could not void the liens because the abandoned property was not property of the estate. Id. at 591.  The Supreme Court affirmed the Tenth Circuit's decision without discussing the effect of the abandonment. Id. at 417. While abandoned property does cease to be property of the estate as pointed out in Dewsnup, it is still property of the debtor over which the court has exclusive jurisdiction pursuant to 28 U.S.C. § 1334(e)(1).  Here, the title to the Property remained in the name of the debtors prior to and after the order of abandonment was entered.

This court previously addressed a similar jurisdictional issue in In re Gunter, 410 B.R. 178 (2008). Specifically, the court addressed whether it had jurisdiction to rule on a motion for summary judgment in an adversary proceeding involving a dispute between creditors regarding lien priority. Id. at 180.  There, the chapter 7 trustee filed and served notice of abandonment under §554 of the Bankruptcy Code, believing there was no equity in the property.  Id.  No responses were filed and an order of abandonment was later entered.  Id.  The court conducted a hearing on the motion for summary judgment on December 13, 2007, the property at issue was abandoned on December 17, 2007 and the summary judgment order was entered on December 21, 2007.  Id. at 180.  The court noted that although the property was abandoned on December 17, the court did not lose its jurisdiction over the adversary proceeding.  Id.  The court found that the court's jurisdiction does

6

not depend on whether or not the property is property of the estate or whether or not the property has been abandoned. Id. Even though the property was abandoned and ceased to be property of the estate, the court found it was still property of the debtor over which the court has jurisdiction pursuant to §1334(e)(1). Id. at 181. The court noted that an adversary proceeding to resolve a dispute between two competing lienholders involving property of the debtor that is not property of the estate is a core proceeding under 28 U.S.C. § 157(b)(2)(K). The court stated, however, that it "would likely abstain from hearing the adversary proceeding if the outcome would not affect the estate or the debtor." Id. Because the court found that the adversary proceeding was a core proceeding and the outcome of the proceeding would affect the estate and the debtor it was able to hear the matter. Id.

Here, as in Gunter, the determination of the objection to claim will affect other creditors in this case, especially the second lien holder CPS and unsecured claimants. See also 4 COLLIER ON BANKRUPTCY ¶ 554.02[3] (15th ed. rev. 2003) (noting that abandonment of property will not usually end the court's jurisdiction to determine disputes concerning the property when the result of the dispute could have some effect on the bankruptcy case). The determination of the trustee's objection to claim, has a direct effect on the amount of proceeds CPS and other unsecured claimants will receive.

Further, East Carolina Bank, the predecessor of Yadkin Bank, filed Claim 5 in the amount of $628,434.23 on August 23, 2012. The trustee filed his objection to Claim 5 on November 5, 2014. Rule 3006 of the Federal Rules of Bankruptcy Procedure provides:

> A creditor may withdraw a claim as of right by filing a notice of withdrawal, except as provided in this rule. If after a creditor has filed a proof of claim an objection is

>filed thereto . . . the creditor may not withdraw the claim except on order of the court after a hearing on notice to the trustee or debtor in possession . . . .

Fed. R. Bankr.P. 3006.

"The plain language of Bankruptcy Rule 3006 establishes bright-line tests marking the termination of a creditor's 'otherwise unfettered right voluntarily and unilaterally to withdraw a proof of claim.'" Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc. (In re Mid-Atlantic Handling Systems, LLC), 304 B.R. 111, 123 (Bankr.D.N.J. 2003) (citation omitted). Yadkin Bank has not filed a motion to withdraw its claim. No notice of any withdrawal has been docketed or noticed out. Yadkin Bank represents that the trustee would not consent to a withdrawal of its claim. It amended its claim to $0 on December 17, 2014. Filing a proof of claim subjects the creditor to the bankruptcy court's equitable jurisdiction. See Stern v. Marshall, 131 S.Ct. 2594, 2629 (2011); Langenkamp v. Culp, 498 U.S. 42, 44 (1991). Yadkin Bank cannot unilaterally withdraw its claim while the objection to claim is pending. Accordingly, the bankruptcy court has jurisdiction over the Property and Claim 5 to determine Yadkin Bank's attorney's fees.

Since the court has determined it has jurisdiction to determine this matter, the court must now decide whether the attorney's fees requested by Yadkin Bank are proper. Yadkin Bank requests that it be awarded attorney's fees in the approximate amount of $160,156.88 representing the maximum amount of attorney's fees available under North Carolina law of fifteen percent of the final sale price pursuant to N.C. Gen. Stat. §6-21.2 and the maximum state law trustee commission of five percent of the final sale price. The trustee believes that counsel for Yadkin Bank is entitled to attorney's fees for its work done in connection with the foreclosure of the Property, but believes

that attorney's fees of $160,156.88 are unreasonable and that Yadkin Bank should first file a motion for approval and review of the fee request by this court.

Section 506(b) of the Bankruptcy Code provides oversecured creditors the right to seek reimbursement for "reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." 11 U.S.C. § 506(b).  Whether attorney's fees are recoverable under 11 U.S.C. § 506(b) is based on interpretation of applicable state law. In re Winslow, No. 10-06745-8-JRL, 2011 WL 5902619 at *2 (Bankr. E.D.N.C. Jun. 22, 2011). Before an award of attorney's fees under § 506(b) can be made, compliance with state law conditions precedent must be established. Id. (citing Independence Nat'l Bank v. Dye Master Realty, Inc. (In re Dye Master Realty, Inc.), 15 B.R. 932 (Bankr. W.D.N.C. 1981)). The contract providing for attorney's fees shall be interpreted through the "lens of state law." Id. Once it is determined that state law conditions precedent have been fulfilled and attorney's fees should otherwise be awarded under state law, "federal courts must then determine whether the amount of fees is reasonable under federal law." Id. Courts may then "inquire into whether the services in question were reasonably required under the circumstances." Id.

North Carolina law allows for the recovery of reasonable attorney's fees incurred in connection with collection of a debt, when the note provides for such recovery. N.C. Gen. Stat. § 6-21.2. North Carolina General Statute § 6-21.2 provides in part:

> Obligations to pay attorneys' fees upon any note, conditional sale contract or other evidence of indebtedness, in addition to the legal rate of interest or finance charges specified therein, shall be valid and enforceable, and collectible as part of such debt, if such note, contract or other evidence of indebtedness be collected by or through an attorney at law after maturity, subject to the following provisions:

> (1) If such note, conditional sale contract or other evidence of indebtedness provides for attorneys' fees in some specific percentage of the "outstanding balance" as herein defined, such provision and obligation shall be valid and enforceable up to but not in excess of fifteen percent (15%) of said "outstanding balance" owing on said note, contract or other evidence of indebtedness.
>
> (2) If such note, conditional sale contract or other evidence of indebtedness provides for the payment of reasonable attorneys' fees by the debtor, without specifying any specific percentage, such provision shall be construed to mean fifteen percent (15%) of the "outstanding balance" owing on said note, contract or other evidence of indebtedness.

N.C. Gen. Stat. § 6-21.2.

A reading of the statute and relevant case law reveals that whether § 6-21.2(1) or § 6-21.2(2) applies depends on the language of the underlying contract or agreement. In re Pak-A-Sak Food Stores, Inc., Case No. 06-04078-8-JRL at 3 (Bankr. E.D.N.C. Jan. 9, 2008). Some courts apply a strict interpretation of N.C. Gen. Stat. § 6-21.2 and find that provisions addressing attorney's fees "fall within one of two categories—those that specify a percentage and those that do not." In re Brier Creek Corporate Ctr. Associates Ltd. P'ship, No. 12-01855-8-SWH, 2013 WL 211119, at *6 (Bankr. E.D.N.C. Jan. 18, 2013). According to those courts, if the agreement provides that the attorney's fees is based on a specific percentage of the outstanding balance of the obligation, then § 6-21.2(1) authorizes the application of the parties' contractually agreed upon percentage. Id. If, however, the agreement only calls for payment of "reasonable attorneys' fees" rather than a specific percentage, § 6-21.2(2) applies, which provides that "reasonable" is construed to mean fifteen percent of the outstanding balance. Id. (citations omitted). Not all attorney's fees language, however, fits so neatly within either subsection (1) or subsection (2) of N.C. Gen. Stat. § 6-21.2. Id. (citing to the North Carolina state court decision Barker v. Agee, 93 N.C. App. 537, 378 S.E.2d 566 (1989), aff'd in part, rev'd in part (on other grounds), 326 N.C. 470, 389 S.E.2d 803 (1990)

(interpreting a note providing for reasonable fees "but not more than such attorneys' usual hourly charges for time actually expended")).

Accordingly, courts addressing attorney's fees and the application of subsections (1) and (2) of N.G. Gen. Stat. § 6-21.2, have interpreted language that falls within one of three categories: "(1) provisions that provide for the calculation of fees based on a fixed, minimum or maximum percentage of the outstanding balance; (2) provisions that allow for 'reasonable attorneys' fees' without indicating in any way how the amount should be calculated; and finally, (3) provisions that express the parties' intent as to the method for calculating fees but do not specify any percentage." *Id.* at 4.

The promissory note executed by the debtors and Yadkin Bank provides the following provision regarding attorney's fees:

> Attorneys' Fees and Other Costs.  If legal proceedings are instituted to enforce the terms of this Note, Borrower agrees to pay all costs of the Lender in connection therewith, including reasonable attorneys' fees to the extent permitted by law.

Here, the agreement calls for "reasonable attorneys' fees to the extent permitted by law." Therefore, the provisions of §6-21.2(2), rather than §6-21.2(1) apply.

Now that the court has determined that attorney's fees are recoverable under state law, the court must now make a determination as to whether the amount of fees is reasonable under federal law.  In re Winslow, 2011 WL 5902619 at *2 (Bankr. E.D.N.C. Jun. 22, 2011).  Based on recent cases, this court finds that strict application of the per se fifteen percent calculation is not proper. See  In re Brier Creek Corporate Ctr. Associates Ltd. P'ship, No. 12-01855-8-SWH, 2013 WL 211119, at *6  (citing to Silverdeer St. John Equity Partners I LLC v. Kopelman, 2012 U.S. Dist. LEXIS 136287, at *11–21, 2012 WL 4422811 (E.D.N.C. Sept. 24, 2012) (acknowledging that

11

subdivision (2) applied but requiring the plaintiff to submit an affidavit with the "time/billing records associated with the requested fees and costs" in order to determine the appropriate amount of the fee award); see also Telerent Leasing Corp. v. Boaziz, 200 N.C.App. 761, 766–67, 686 S.E.2d 520, 523–24 (2009) (interpreting subdivision (2) as a "statutory ceiling of fifteen percent" and affirming trial court's award of attorney's fees in an amount less than 15% of the outstanding balance); Bombardier Capital, Inc. v. Lake Hickory Watercraft, Inc., 178 N.C.App. 535, 541, 632 S.E.2d 192, 197 (2006) (applying subdivision (2) to a contract that provided for "reasonable attorney's fees" but affirming trial court's award of fees in an amount less than the 15% of the outstanding balance)); also see In re Pak-A-Sak Food Stores, Inc., Case No. 06-04078-8-JRL at 3 (Bankr. E.D.N.C. Jan. 9, 2008) (acknowledging that based on the language in the contract that §6-21.2(2) applied but applying the "lodestar" factors to determine if the attorney's fees sought were reasonable). Yadkin Bank has not provided any affidavits or documents to support its award of attorney's fees, but only contends that fifteen percent is the amount required under state law. The Court is unable to determine whether the requested amount is reasonable. Accordingly, Yadkin Bank must submit an affidavit setting forth its time and billing records associated with its fees and costs related to the foreclosure.

## CONCLUSION

Therefore, the ruling on the trustee's objection to claim 5 is deferred. Yadkin Bank shall provide an accounting of the attorney's fees sought and a file stamped copy of the Final Report of Sale of Real Property pursuant to N.C. Gen. Stat. § 45-21.33 to the court on or before March 6, 2015. CPS' motion for 2004 examination of Yadkin Bank seeks information relating to the amount

of Yadkin Bank's claim and the extent and reasonableness of its attorneys' fees, the motion is, therefore, granted.

## END OF DOCUMENT